UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

CR 23-81 PJS/TNL

UNITED STATES OF AMERICA.

Plaintiff,

v.

SADE OSMAN HASHI.

Defendant.

**INDICTMENT**

18 U.S.C. § 371
18 U.S.C. § 666
18 U.S.C. § 1343
18 U.S.C. § 1957

THE UNITED STATES GRAND JURY CHARGES THAT:

At times relevant to the indictment:

## INTRODUCTION

1.    The defendant participated in a multi-million dollar scheme to defraud the federal child nutrition program, a program designed to provide free meals to needy children. The defendant obtained and misappropriated program funds that were intended as reimbursements for the cost of serving meals to children. The defendant exploited changes in the program intended to ensure underserved children received adequate nutrition during the Covid-19 pandemic. Rather than feed children, the defendant exploited the Covid-19 pandemic—and the resulting program changes—to benefit himself and others by fraudulently obtaining millions of dollars in federal child nutrition program funds.

### A.    Background on the Federal Child Nutrition Program

2.    The Food and Nutrition Service is an agency of the United States Department of Agriculture (USDA) that administers various federal child nutrition



SCANNED
MAR 0 7 2023
U.S. DISTRICT COURT MPLS

programs, including the Summer Food Service Program and Child and Adult Care Food Program (together, the "Federal Child Nutrition Program").

3.      The Summer Food Service Program is a federal program established to ensure that children continue to receive nutritious meals when school is not in session. The Summer Food Service Program reimburses non-profit organizations and other participating entities that serve free healthy meals and snacks to children and teens in low-income areas.

4.      The Child and Adult Care Food Program is a federal program that reimburses non-profit organizations and other participating entities that serve healthy meals and snacks to children and adults at participating child care centers, day care homes, and after-school programs.

5.      The Federal Child Nutrition Program operates throughout the United States. The USDA's Food and Nutrition Service administers the programs at the national and regional levels by distributing federal funds to state governments, which provide oversight over the Federal Child Nutrition Program.

6.      The Minnesota Department of Education (MDE) administers the Federal Child Nutrition Program in Minnesota.

7.      Meals funded by the Federal Child Nutrition Program are served by "sites." Each site participating in the Federal Child Nutrition Program must be sponsored by a sponsoring organization that is authorized to participate in the Federal Child Nutrition Program. Sponsors are required to submit an application to MDE for each site. Sponsors are responsible for monitoring each of their sites and preparing reimbursement claims for their sites.

8.      Sponsors submit reimbursement claims to MDE on behalf of sites under their sponsorship. The USDA then provides federal reimbursement funds on a per-meal basis. MDE provides the federal funds to the sponsoring agency, which in turn pays the reimbursements to the sites under its sponsorship. The sponsoring agency retains 10 to 15 percent of the funds as an administrative fee in exchange for sponsoring the sites, submitting reimbursement claims, and disbursing the federal funds.

9.      Historically, the Federal Child Nutrition Program has generally functioned by providing meals to children involved in education-based programs or activities. During the Covid-19 pandemic, however, the USDA waived some of the standard requirements for participation in the Federal Child Nutrition Program. Among other things, the USDA allowed for-profit restaurants to participate in the program. The USDA also allowed for off-site food distribution to children outside of educational programs. At the same time, the state government's stay-at-home order and telework policies made it for difficult to oversee the program. These changes left the program vulnerable to fraud and abuse.

### B.      Feeding Our Future

10.      Feeding Our Future was a non-profit organization purportedly in the business of helping community partners participate in the Federal Child Nutrition Program. Aimee Bock was the founder and executive director of Feeding Our Future.

11.      Prior to the onset of the Covid-19 pandemic, Feeding Our Future was a small non-profit that sponsored the participation of daycares and after-school programs in the Federal Child Nutrition Program.

12.     Beginning in approximately April 2020, Feeding Our Future dramatically increased the number of sites under its sponsorship as well as the amount of Federal Child Nutrition Program funds received by those sites. Feeding Our Future went from receiving and disbursing approximately $3.4 million in federal funds to sites under its sponsorship in 2019 to nearly $200 million in 2021.

13.     Bock oversaw a massive scheme to defraud carried out by sites under the sponsorship of Feeding Our Future. Bock and Feeding Our Future sponsored entities that submitted fraudulent reimbursement claims and fake documentation. Bock and her company sponsored the opening of nearly 200 Federal Child Nutrition Program sites despite knowing that the sites intended to and did submit fraudulent claims.

14.     In exchange for sponsoring the sites' fraudulent participation in the program, Feeding Our Future received nearly $18 million in Federal Child Nutrition Program funds as administrative fees in 2021. Because the amount of administrative fees it received was based on the amount of federal funds received by sites under its sponsorship, Feeding Our Future received tens of millions of dollars in administrative fees to which it was not entitled due to its sponsorship and facilitation of sites fraudulently participating in the program.

15.     In addition to receiving tens of millions in administrative fees, Feeding Our Future employees also solicited and received bribes and kickbacks from individuals and sites under the sponsorship of Feeding Our Future. In effect, Feeding Our Future operated a pay-to-play scheme in which individuals seeking to operate fraudulent sites under the sponsorship of Feeding Our Future had to kick back a

portion of their fraudulent proceeds to Feeding Our Future employees. Many of these kickbacks were paid in cash or disguised as "consulting fees" paid to shell companies created by Feeding Our Future employees to conceal the true nature of the payments and make them appear legitimate.

16.     Hadith Yusuf Ahmed was a Feeding Our Future employee who solicited and received bribes and kickbacks from individuals and companies involved in the Federal Child Nutrition Program under the sponsorship of Feeding Our Future. Ahmed created and used at least one entity, namely Mizal Consulting LLC, to receive and conceal bribe and kickback payments.

C.     **Sponsor A**

17.     Sponsor A was a Minnesota non-profit organization purportedly in the business of helping community partners participate in the Federal Child Nutrition Program. Like Feeding Our Future, prior to the onset of the Covid-19 pandemic, Sponsor A was a small non-profit that sponsored the participation of daycares and after-school programs in the Federal Child Nutrition Program.

18.     Beginning in approximately April 2020, Sponsor A dramatically increased the number of sites under its sponsorship as well as the amount of Federal Child Nutrition Program funds received by those sites. The company went from receiving and disbursing approximately $5.6 million in federal funds to sites under its sponsorship in 2019 to more than $179 million in 2021. In 2021, sites under the sponsorship of Sponsor A claimed to have served more than 80 million meals to children in Minnesota. Most of the sites operating under the sponsorship of

Sponsor A fraudulently inflated their claims in order to appear that they were providing more food to children than was true.

### D.    The Defendant and His Role

19.    Defendant SADE OSMAN HASHI was a principal of "Great Lakes Inc" ("Great Lakes"), which was incorporated with the State of Minnesota in or about May 2013. Since approximately November 2019, HASHI was the Chief Executive Officer of Great Lakes. Under the sponsorship of Feeding Our Future, Great Lakes purported to operate several Federal Child Nutrition Program sites in Minneapolis.

20.    In addition, HASHI's Great Lakes did business as "Safari Express," an assumed name originally registered with the State of Minnesota in approximately 2009 and subsequently reinstated in or about January 2021. HASHI's Safari Express acted as a vendor in the Federal Child Nutrition Program for other sites under the sponsorship of both Feeding Our Future and Sponsor A. As a vendor, Safari Express was supposed to provide food or meals to sites participating in the Federal Child Nutrition Program, and then HASHI's business would be reimbursed for the cost of the food and meals that it actually provided to the public.

### Scheme to Defraud the Federal Child Nutrition Program

21.    From in or about September 2020 through in or about 2022, the defendant,

### SADE OSMAN HASHI,

together with other scheme participants, did knowingly and intentionally devise and participate in a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by

concealment of material facts, and for the purpose of executing this scheme caused wire transmissions to be sent in interstate commerce.

22.    A main purpose of the scheme to defraud was to obtain Federal Child Nutrition Program funds by submitting fraudulent claims that HASHI was serving meals to hundreds or thousands of children a day. However, rather than serving food as claimed, HASHI and his fellow schemers submitted false and fraudulent information, such as rosters. As a result, HASHI fraudulently received approximately $5.7 million in Federal Child Nutrition Program funds to reimburse substantial food and meal expenses that he did not actually incur.

23.    It was part of the scheme that, on or about September 25, 2020, HASHI and Aimee Bock submitted an application to enroll Great Lakes as a site in the Federal Child Nutrition Program under the sponsorship of Feeding Our Future. HASHI signed the application as the owner of Great Lakes. The application stated that the site would be located at the Midtown Global Market in Minneapolis.

24.    As part of the scheme, HASHI submitted increasingly inflated meal claims for his site. For instance, on or about January 7, 2021, HASHI submitted to Feeding Our Future meal count forms claiming falsely that the Great Lakes site served breakfast and lunch to approximately 500 children a day, seven days a week, in December 2020. By May 2021, HASHI falsely claimed that Great Lakes was serving 2,500 suppers and snacks each day. HASHI also submitted false invoices to Feeding Our Future in order to make the claims appear legitimate. For instance, HASHI's Great Lakes submitted an invoice dated June 1, 2021, purporting to show

that Safari Express provided approximately $330,150 in food to Great Lakes. In reality, however, HASHI expended a minimal amount of funds toward food.

25. In addition to operating a site, it was part of the scheme that HASHI purported to be a vendor ostensibly providing food through the Federal Child Nutrition Program for multiple sites operated by other parties under the sponsorship of both Feeding Our Future and Sponsor A. For instance, starting in at least May 2021, HASHI—through Great Lakes—was the vendor ostensibly supplying food for a Feeding Our Future site located at Park Avenue and Oakland Avenue in Minneapolis. Ultimately, HASHI's Great Lakes received more than $650,000 directly from businesses that were allegedly running their own sites through the Federal Child Nutrition Program.

26. Rather than spend Federal Child Nutrition Program funds on commensurate amounts of food, it was part of the scheme that HASHI and other scheme participants spent much of the funds on themselves and on items unrelated to feeding children. For instance, from Great Lakes bank accounts that HASHI partially controlled, at least $100,000 was withdrawn in cash, approximately $133,000 was converted to apparent cryptocurrency, and HASHI deposited tens of thousands of dollars into his personal account.

27. As part of the scheme, HASHI provided fraudulent rosters of children who ostensibly received meals at Great Lakes distribution sites in order to receive reimbursement funds fraudulently from the Federal Child Nutrition Program. In reality, however, some of the rosters used by HASHI to support his claims were fake

and duplicative lists used by HASHI and other participants in the scheme to defraud the Federal Child Nutrition Program.

28. It was further part of the scheme to defraud that HASHI paid more than $150,000 in kickbacks to a Feeding Our Future employee, Hadith Ahmed, in exchange for Feeding Our Future's sponsorship of HASHI's fraudulent participation in the Federal Child Nutrition Program. These kickbacks were disguised as loan payments or repayments to a shell company created by Hadith Ahmed. For example, on or about May 5, 2021, HASHI wrote a check from Great Lakes to Ahmed for $10,000, with the memo line falsely stating that it was for "consulting exp." Also, on or about June 1, 2021, HASHI wrote a $73,000 check from Great Lakes to Mizal Consulting, the shell company created and used by Hadith Ahmed to receive and conceal bribe and kickback payments. The memo line on the check falsely stated that it was for "loan repayment." Finally, on or about July 1, 2021, HASHI wrote a $71,500 check from Great Lakes to Mizal Consulting, which was another kickback to Ahmed.

## Counts 1-5
(Wire Fraud)

29. Paragraphs 1 through 28 are incorporated herein.

30. From at least in or about September 2020 through in or about 2022, in the State and District of Minnesota, and elsewhere, the defendant,

### SADE OSMAN HASHI,

and others known and unknown to the grand jury, did knowingly devise and participate in a scheme and artifice to defraud and to obtain money by means of

materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

31. On or about the dates listed below, in the State and District of Minnesota and elsewhere, the defendant, for the purpose of executing the scheme described above, knowingly caused to be transmitted by means of a wire communication in interstate commerce, certain writings, signs, signals, and sounds, each of which passed through servers located outside the State of Minnesota, including the following:

| Count | Date (on or about) | Wire Details |
|---|---|---|
| 1 | May 13, 2021 | An email from SADE OSMAN HASHI to Feeding Our Future that contained two Safari Express invoices that totaled approximately $639,000 |
| 2 | June 12, 2021 | An email from SADE OSMAN HASHI to Feeding Our Future that contained meal count sheets and a Safari Express invoice that totaled approximately $330,150 |
| 3 | July 9, 2021 | An email from SADE OSMAN HASHI to Feeding Our Future that contained two Safari Express invoices that totaled approximately $344,520 |
| 4 | November 9, 2021 | An email from SADE OSMAN HASHI to Feeding Our Future that contained meal count sheets, a roster, and a Safari Express invoice that totaled approximately $70,848 |
| 5 | December 8, 2021 | An email from SADE OSMAN HASHI to Feeding Our Future that contained meal count sheets, a roster, and two Safari Express invoice to Feeding Our Future that totaled approximately $173,850 |

All in violation of Title 18, United States Code, Section 1343.

## Count 6
(Conspiracy to Commit Federal Programs Bribery)

32. Paragraphs 1 through 28 are incorporated herein.

33. From in or about May 2021 to in or about July 2021, in the State and District of Minnesota, the defendant,

### SADE OSMAN HASHI,

conspired with Hadith Yusuf Ahmed and others known and unknown to the grand jury to commit federal programs bribery, that is, to corruptly agree to give anything of value to any person, with intent to influence and reward an agent of an organization, to wit, Hadith Yusuf Ahmed, in connection with any business, transaction and series of transactions with Feeding Our Future involving anything of value of \$5,000 or more, that is, in exchange for sponsoring their fraudulent participation in the Federal Child Nutrition Program, where Feeding Our Future received benefits in excess of \$10,000 under federal programs involving grants, contracts, subsidies, loan guarantees, insurance and other forms of federal assistance in any one-year period, in violation of Title 18, United States Code, Section 666(a)(2).

## Purpose and Object of the Conspiracy

34. The object and purpose of the conspiracy was for individuals and entities participating in the fraudulent scheme to obtain Federal Child Nutrition Program funds to pay bribes and kickbacks to a Feeding Our Future employee in exchange for Feeding Our Future's sponsorship of their fraudulent participation in the Federal Child Nutrition Program.

## Manner and Means of the Conspiracy

35.    The conspirators used the following manner and means, among others,
to accomplish the objects and purpose of the conspiracy:

a.    A Feeding Our Future employee, Hadith Yusuf Ahmed, solicited
and accepted bribes and kickbacks from HASHI in exchange for sponsoring his
company's fraudulent participation in the Federal Child Nutrition Program under
the sponsorship of Feeding Our Future.

b.    Ahmed created a fake consulting company, Mizal Consulting
LLC, for use in accepting and hiding the bribe and kickback payments.

c.    HASHI paid bribes and kickbacks to Ahmed in exchange for his
role in sponsoring and facilitating HASHI's fraudulent participation in the Federal
Child Nutrition Program. HASHI disguised the bribe and kickback payments as
consulting payments or other legitimate payments to Ahmed and to Ahmed's fake
consulting company, Mizal Consulting LLC. In reality, the payments were bribes and
kickbacks.

## Acts in Furtherance of the Conspiracy

36.    The conspirators used the following manner and means, among others,
to accomplish the objects and purpose of the conspiracy:

37.    On or about December 1, 2020, Ahmed registered Mizal Consulting LLC
with the Minnesota Secretary of State.

38.    On or about May 5, 2021, HASHI wrote a $10,000 check to Ahmed, with
the memo line falsely stating that the payment was for "consulting exp."

39.    On or about June 1, 2021, HASHI wrote a $73,000 check to Mizal Consulting, with the memo line falsely stating that the payment was for "loan repayment."

40.    On or about July 1, 2021, HASHI wrote a $71,500 check to "Mizal Consultent" for "loan" payment.

All in violation of Title 18, United States Code, Section 371.

### Counts 7-9
(Federal Programs Bribery)

41.    Paragraphs 1 through 28 and 33 through 40 are incorporated herein.

42.    On or about the dates set forth below, in the State and District of Minnesota, and elsewhere, the defendant,

### SADE OSMAN HASHI,

corruptly gave, offered and agreed to give anything of value to any person with intent to influence and reward an agent of an organization, as set forth below, in connection with any business, transaction and series of transactions of each organization involving anything of value of $5,000 or more, where such organization received benefits in excess of $10,000 annual under federal programs involving grants, contracts, subsidies, loan guarantees, insurance and other forms of federal assistance in any one-year period, as follows:

| Count | Date (on or about) | Payment |
|---|---|---|
| 7 | May 5, 2021 | A $10,000 check from Great Lakes Inc to Hadith Ahmed |
| 8 | June 1, 2021 | A $73,000 check from Great Lakes Inc to Mizal Consulting |
| 9 | July 1, 2021 | A $71,500 check from Great Lakes Inc to Mizal "Consultent" |

All in violation of Title 18, United States Code, Section 666.

## Count 10
(Money Laundering)

43.     Paragraphs 1 through 28 are incorporated herein.

44.     On or about the date listed below, in the State and District of Minnesota and elsewhere, the defendant,

### SADE OSMAN HASHI,

knowingly engaged and attempted to engage in monetary transactions by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, as described below, such property having been derived from specified unlawful activities, namely, wire fraud, in violation of Title 18, United States Code, Section 1343, as follows

| Count | Date (on or about) | Transaction |
|-------|--------------------|-------------|
| 10 | October 25, 2021 | Deposit of check in the approximate amount of $21,800.38 from "Great Lakes Inc Safari Express" to Toyota Financial Services |

All in violation of Title 18, United States Code, Section 1957.

### FORFEITURE ALLEGATIONS

45.     Counts 1 through 10 of this Indictment are incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) in conjunction with Title 28, United States Code, Section 2461(c), and pursuant to Title 18, United States Code, Section 982(a)(1).

46.     If convicted of any of Counts 1 through 9 of this Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property,

14

real or personal, which constitutes or is derived from proceeds traceable to Counts 1 through 9 of the Indictment.

47.     If convicted of Count 10 of this Indictment, the defendant shall also forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in a transaction or attempted transaction in the violation of 18 U.S.C. § 1957 and any property traceable to such property.

48.     If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____        _____
UNITED STATES ATTORNEY                    FOREPERSON